**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BARBARA DOUGHERTY                    :        CIVIL ACTION
                                     :
        v.                           :        05-2336
                                     :
TEVA PHARMACEUTICALS USA             :


JOYNER, J.                                    August 29, 2006

<u>**MEMORANDUM AND ORDER**</u>

        Via the motion now pending before this court, Defendant,

TEVA Pharmaceuticals USA ("Defendant" or "TEVA"), moves to

dismiss Plaintiff's Complaint pursuant to Federal Rule of

Procedure 12(c) or 56(c).  For the reasons set forth below, the

motion shall be granted in part and denied in part.

**I.    Procedural Background**

        Plaintiff, Barbara Dougherty ("Plaintiff"), seeks recovery

for alleged violations of the Americans with Disabilities Act, 42

U.S.C. § 12101 et seq. ("ADA"), and the Family and Medical Leave

Act, 29 U.S.C. § 2601 et seq. ("FMLA").  Plaintiff filed this

case as a pro se plaintiff, and was granted leave to proceed in

forma pauperis.  TEVA answered Plaintiff's Complaint, and then

filed a Motion for Judgment on the Pleadings and/or Summary

Judgment on the basis that Plaintiff's claims were barred by a

release agreement and that she failed to state a claim for which

relief could be granted.  Plaintiff responded to this motion, and

also requested that this Court appoint counsel to act on her

behalf.  The Court appointed counsel to represent Plaintiff,

ordered Plaintiff to submit an Amended Complaint, and granted leave to conduct discovery limited to the question of the validity of any release agreement signed by Plaintiff.  Plaintiff was deposed, and filed an Amended Complaint.  TEVA filed a Supplement to Defendant's Memorandum of Law in Support of its Motion for Judgment on the Pleadings and/or Summary Judgment that renewed its original motion to the extent it argued that Plaintiff's claims were barred by a release agreement.[1]

## II.  Factual Background

Plaintiff was hired by TEVA on May 4, 1998 as a receptionist.  (Pl.'s Dep. at 18.)  Plaintiff later applied for and was awarded the position of senior secretary in the medical affairs department.  (Id. at 20-21.)  In that position, Plaintiff reported to department manager Andy Shapiro, and was also supervised by Valarie Cullen ("Cullen").  (Id. at 21, 23.)

In 2003, there was friction between Cullen and Plaintiff. (Pl.'s Dep. at 27-29.)  The two had disagreements regarding Plaintiff's work performance.  (Id.)  Cullen also involved herself in the efforts of Plaintiff's family members to convince Plaintiff to resume medication she had been prescribed to treat her post-traumatic stress disorder ("PTSD").  (Id. at 44.) Plaintiff contacted the Equal Opportunity Employment Commission

---

[1]While Defendant's Supplement purports to "augment" the earlier motion, facial deficiencies in pleading complained of in the original motion were resolved by the Amended Complaint, making those portions of the motion moot.

("EEOC") in May 2003 because she felt that she was the victim of discrimination.  (Id. at 34-35.)  Plaintiff also looked for other employment.  (Id. at 29-31.)

Plaintiff's issues with Cullen culminated in a meeting with Senior Director of Human Resources Anthony Cerbone ("Cerbone"). (Pl.'s Dep. at 29-31.)  Apparently unable to resolve the situation, Cerbone suggested that it might be best if Plaintiff left TEVA.  (Id. at 29-30.)  Cerbone mentioned the possibility of providing a severance package for Plaintiff.  (Id. at 32.)

On June 9, 2003, Plaintiff received a Separation Agreement and General Release via inter-department mail.  (Pl.'s Dep. at 57.)  The Separation Agreement and General Release provided that, in exchange for agreeing to its terms, Plaintiff would receive one month's salary and continued health insurance through COBRA. (Id.)  Plaintiff left work on June 9, 2003, and decided not to return to TEVA.  (Id. at 39, 57.)

On June 10, 2003, Plaintiff called Cerbone regarding the papers she had received the previous day.  (Pl.'s Dep. at 57-58.) Plaintiff told Cerbone that she did not want to leave the company, but that she wanted to take a leave of absence.  (Id.) Cerbone offered to increase the compensation under the severance package to two months of salary and two months of continued coverage through COBRA.  (Id.)  Plaintiff said "okay," and on June 13, 2003 Cerbone mailed a second Separation Agreement and General Release (the "Agreement") including this change.  (Id. at

37-38; <u>see</u> Def.'s Mot. for Judgment on the Pleadings and/or

Summary Judgment ("Def.'s Mot.") Ex. A, Agreement.)

Plaintiff discussed the Agreement with her son and daughter-

in-law. (Pl.'s Dep. at 39-40.)  Plaintiff also discussed the

Agreement by phone with Ed McCaffrey ("McCaffrey"), a

representative from the EEOC.  (<u>Id.</u>)  Plaintiff's family members

and McCaffrey all advised Plaintiff to sign the agreement.[2]  (<u>Id.</u>

at 45-46.)  Plaintiff attempted to engage an attorney, and

contacted perhaps half a dozen, but was unable to retain counsel.

(<u>Id.</u> at 41.)

The Agreement provides, in relevant part:

1.   TEVA agrees to pay DOUGHERTY, by means of a lump
sum, the equivalent of two month's wages, in addition
to the equivalent cost of two month's COBRA coverage
and further agrees not to contest DOUGHERTYS' [sic]
application, if any, for unemployment benefits and, in
consideration of such and intending to be legally
bound, DOUGHERTY does hereby REMISE, RELEASE and
FOREVER DISCHARGE TEVA . . . of and from any and in all
manner of actions, causes of action, suits, debts,
claims and demands arising from or relating in any way
to her employment with TEVA.  DOUGHERTY specifically
waives any claims that she might have under Title VII
of the Civil Rights Act of 1964, the Americans with
Disabilities Act, the Age Discrimination in Employment
Act, the Employee Retirement Income and Security Act of
1974, the Pennsylvania Law Against Discrimination and
any and all other federal, state or local statutory
claims or claims under common laws including claims for
breach of contract, wrongful discharge, defamation or
tortious conduct and any and all other claims arising
out of DOUGHERYS' [sic] employment with TEVA which
could be brought in federal or state court . . . .

---

[2]In her Affidavit, Plaintiff claims that a different,
unnamed EEOC representative later assured her that she could
still sue despite having signed the agreement.  (Pl.'s Aff. at ¶
13.)

2.    DOUGHERTY further acknowledges that:

   (a)   she waives her claims knowingly and
         voluntarily in exchange for the consideration
         described in paragraph one (1) above, and
         acknowledges that she would not otherwise
         have been entitled to that consideration and
         that the consideration provided is of value;

   (b)   she has, by virtue of this Agreement, been
         advised in writing by TEVA to consult with an
         attorney in connection with this Agreement;

   (c)   she has been given a period of twenty-one
         (21) days to consider this Agreement;

   (d)   she understands that she may revoke this
         Agreement for a period of seven (7) days
         following the date she signs the Agreement
         and that the Agreement will not become
         effective until the seven (7) day revocation
         period has expired;

   (e)   if she revokes the Agreement in accordance
         with subparagraph (d) above, she will no
         longer be eligible for the consideration
         described in paragraph one (1) above

. . .

3.    DOUGHERTY further agrees and covenants that
neither she nor any person, organization or other
entity acting on her behalf, will file, charge, claim,
sue or cause or permit to be filed, charged, or
claimed, any further action for damages . . . involving
any matter occurring at any time in the past up to the
date of this Agreement before any court . . . involving
the continuing effects of any acts or practices which
may have arisen or occurred prior to the date of this
Agreement.

. . .

6.    DOUGHERTY agrees that, as a condition of this
Agreement, she is precluded from disclosing, directly
or indirectly, the existence of this Agreement and/or
the terms and conditions of this Agreement to any
person, place or thing whatsoever, aside from
DOUGHERTYS' [sic] immediate family, accountant(s) or
lawyer(s).  DOUGHERTY further agrees that disclosure of

this Agreement, its terms and conditions, and
specifically the terms relating to TEVA'S obligations
and the consideration described in Paragraph one (1),
by either party or by anyone acting on DOUGHERTYS'
[sic] behalf, including counsel, shall be deemed a
material breach of this Agreement.

. . .

See Agreement.  Plaintiff stated that she understood that, by

signing the Agreement, she was promising not to bring a claim

against TEVA.  (Pl.'s Dep. at 46-47.)  Plaintiff executed the

Agreement on July 2, 2003 and returned it to TEVA.  (Id. at 43.)

Plaintiff felt pressured by her family and Cullen to sign

the Agreement.[3]  (Pl.'s Dep. at 44.)  Plaintiff and Cullen never

discussed the agreement.  (Id. at 44-45.)  Cullen did call

Plaintiff at some point after June 8, 2003, and asked her whether

she planned to return to work.  (Id. at 45.)

Plaintiff testified that she signed the agreement because

she "needed the money for therapy" and for a place to live.

(Pl.'s Dep. at 45.)  While Plaintiff understood that she agreed

not to bring a claim against TEVA, she believed that the

Agreement was part of what she perceived to be harassment, and

that the agreement was "illegal."  (Id. at 41, 47.)

On July 9, 2003, Plaintiff called Cerbone's office, and

planned to tell him that she wanted to revoke the Agreement.

---

[3]Plaintiff's Opposition to Defendant's Motion for Judgment
on the Pleadings relied, in part, on Plaintiff's Affidavit.  This
affidavit included allegations that, during the months leading up
to Plaintiff's severance, Cullen and other TEVA employees made
threats to have Plaintiff involuntarily committed.  (Pl.'s Aff.
at ¶¶ 7, 8.a and h.)

(Pl.'s Dep. at 49-50, 65.)  Cerbone was not available, so Plaintiff spoke with his secretary.  (Id.)  Plaintiff did not state the purpose of her call, but asked instead that her call be returned.  (Id.)  Plaintiff left a phone number for her son's home, where she was staying on July 9, and a friend's house, where she planned to be staying on July 11.  (Id.)  Plaintiff testified that she also called TEVA again "a couple of times" on July 11, and was not able to reach Cerbone directly, but left messages on both Cerbone's and his secretary's voice mail, asking for her call to be returned.  (Id.)  Plaintiff claims that she did not leave a message specifically revoking the Agreement because she believed that the language therein prohibiting her from disclosing the existence and contents of the agreement meant that she could only speak to Cerbone directly, and could not leave a voice mail message.  (Pl.'s Dep. at 49; Pl.'s Aff. at ¶ 10.)

Michelle Wilhelm, an administrative assistant in TEVA's Human Resources Department, called Plaintiff at her son's home on July 11, but Plaintiff was not there.  (Pl.'s Dep. at 66.) Plaintiff did not make any further to contact TEVA.  (Id. at 50, 67.)  In accordance with the provisions of the Agreement, Plaintiff received a check from TEVA on July 11, 2003.  (Id. at 52.)  Plaintiff retained the monies paid to her under the Agreement.  (Pl.'s Mem. of Law in Opp. to Def.'s Mot. (Pl.'s Opp.) at 4.)

In addition to the undisputed facts set forth above, Plaintiff has, through her pro se pleadings and Affidavit, alleged a pattern of conduct by Cullen and others that she perceived as harassing and threatening.  Specifically, Plaintiff's Opposition to Defendant's motion relies, in part, on Plaintiff's allegation that Cullen, Mary Ann Geiger ("Geiger"), and Tu Din Tu ("Tu")[4], threatened Plaintiff with involuntary commitment.  (<u>See</u> Pl.'s Opp. at 5; Pl.'s Aff. at ¶¶ 7, 8.a, b, h) Plaintiff alleges that in April and May of 2003, Cullen told Plaintiff "I think you should take your medicine," and mentioned that she had once used force to make her son take medication. (<u>Id.</u> at 8.b, h)  These comments led Plaintiff to believe that Cullen would try to have her involuntarily committed if she did not take her medication.  (<u>Id.</u>)  Plaintiff alleges that, at some point after Cullen's comments regarding Plaintiff's medication, Geiger complained to Plaintiff about the condition of her car, and then mentioned "we're looking for a two to three year commitment."  (<u>Id.</u> at 8.a.)  This comment lead Plaintiff to believe that Cullen had enlisted Geiger's help to have Plaintiff involuntarily committed if she didn't leave TEVA.  (<u>Id.</u>)  Lastly, Plaintiff alleges that in February 2003, Tu told her a story that she interpreted as a threat to have her involuntarily committed. (<u>Id.</u>)

---

[4]Tu and Geiger were also TEVA employees.

**III. Legal Standard for Summary Judgment**

In deciding a motion for summary judgment[5] under Fed. R. Civ. P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citations omitted). Rule 56(c) provides that summary judgment is properly rendered:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of identifying portions of the record that demonstrate the absence of issues of material fact. Celotex, 477 U.S. at 323. The party opposing a motion for summary judgment cannot rely upon the allegations of the pleadings, but instead

---

[5]Defendant's motion seeks dismissal of Plaintiff's Complaint pursuant to Rule 12(c) or 56(c). Because we go beyond the pleadings to consider Plaintiff's deposition testimony, we treat this motion as one for summary judgment under Rule 56.

must set forth specific facts showing the existence of a genuine
issue for trial.  Id. at 324; Fed. R. Civ. P. 56(e).  "With
respect to an issue on which the nonmoving party bears the burden
of proof," the movant may satisfy its burden by "'showing' – that
is, pointing out to the district court – that there is an absence
of evidence to support the nonmoving party's case."  Celotex, 477
U.S. at 325.

## IV.  Discussion

Defendant argues that Plaintiff's claims under the FMLA and
ADA are barred by the Agreement.  Defendant argues that the
Agreement bars Plaintiff from asserting a cause of action under
the FMLA.[6]  The relevant regulations, however, prohibit Plaintiff
from waiving her rights under the FMLA.

29 C.F.R. § 825.220(d) provides that "employees cannot
waive, nor may employers induce employees to waive, their rights
under [the] FMLA."  The question of whether an employee can, as
part of a severance agreement, waive his or her right to sue for
violations of the FMLA appears to be a matter of first impression
in this circuit.  Only a few courts have examined this question,
and the results have not been entirely consistent.  We are
satisfied that the plain language of § 825.220(d) prohibits such
waiver, and that the regulation is valid under Chevron U.S.A.
Inc. v. NRDC, 467 U.S. 837 (1984).

---

[6]Plaintiff's Complaint appears to contain claims based on
interference, discrimination, and retaliation.  (See Pl.'s Compl.
at ¶¶ 25-31.)

Under Chevron, where Congressional intent is unclear, we defer to an agency's reasonable construction of the statute it administers.  Romanishyn v. AG of the United States, No. 05-3141, 2006 U.S. App. LEXIS 18225 (3d Cir. July 20, 2006) (citing Chevron, 467 U.S. at 842-843).  The intent of Congress is unclear "where a statute is silent or ambiguous with respect to the question at issue."  Id.  The initial inquiry under Chevron, therefore, is whether Congress has spoken to the question before us.  The statutory text of the FMLA "neither explicitly provides for nor precludes" the waiver of claims.  See 29 U.S.C. § 2601 et seq.; Taylor v. Progress Engergy, Inc., 415 F.3d 364, 369 (4th Cir. 2005).  Thus, Congress has not spoken directly to the question of waiver.

Congress has, however, directed that Secretary of Labor issue such regulations as are "necessary to carry out" the statute.  29 U.S.C. § 2654.  The comprehensive regulations promulgated by the Department of Labor ("DOL") pursuant to § 2654 includes § 825.220(d).  The second part of the Chevron analysis turns on whether the regulation is "based on a permissible construction" of the FMLA.  See Chevron, 467 U.S. at 843

While no court has concluded that § 825.220(d) is impermissible under Chevron, courts have differed somewhat in their interpretation of the actual meaning of that section. Compare Taylor, 415 F.3d at 369-71 with Faris v. Williams WPC-1,

Inc., 332 F.3d 316, 319-322 (5th Cir. 2003)[7].  In <u>Faris</u>, the
Fifth Circuit interpreted the language of § 825.220(d) as
implicitly limited in two significant ways.[8]  The <u>Faris</u> court
found that the term "employee" refers only to current employees.
<u>Faris</u>, 332 F.3d at 320.  Thus, the court concluded that §
825.220(d) does not invalidate a <u>former</u> employee's agreement
waiving his rights under the FMLA.  <u>Id.</u>  The court looked to
other uses of the word "employee" in the FMLA and relevant
regulations.  <u>Id.</u>  Usage varied in whether it contemplated
current or former employees, and several instances of use within
the same subsection concerned only current employees.  <u>Id.</u>  Thus,
the court concluded that there were "strong indications" that
only current employees were covered.  <u>Id.</u>

    <u>Faris</u> also held that § 825.200(d) prohibits only the
prospective waiver of rights under the statute.  <u>Faris</u>, 332 F.3d

_____

    [7]Defendant offers <u>Halvorson v. Boy Scouts of Am.</u>, No. 99-
5021, 2000 U.S. App. LEXIS 9648 (6th Cir. May 3, 2000) as a case
in harmony with <u>Faris</u>.  <u>Halvorson</u>, however, while it allowed
waiver of FMLA claims in a resignation agreement, did not even
mention § 825.220(d), much less provide any guidance as to its
applicability.  Particularly in the context of an unpublished
opinion with no mention of the relevant issue, we will not assume
that the <u>Halvorson</u> court considered the implications of §
825.220(d).
    Likewise, Plaintiff suggests that <u>Conoshenti</u> represents the
Third Circuit's intent that § 825.220(d) apply to all waivers
without restriction.  <u>Conoshenti</u>, however, discussed whether
acceptance of a "light duty" assignment is considered waiver of
rights under the FMLA, and did not address the effectiveness of
waiver in a severance agreement.

    [8]The Fifth Circuit did not analyze § 825.220(d) under the
<u>Chevron</u> framework.  <u>See</u> <u>Faris</u>, 332 F.3d at 319-322.

at 321.  The court treated rights to leave and reinstatement as
"substantive" rights under the FMLA that could be prospectively
waived.  Id.  In contrast, causes of action for damages – suits
based on retaliation or discrimination – were considered to be
"protection" for FMLA rights, and thus could not be considered
"rights under the FMLA" that were exempt from waiver.  Id.  In so
deciding, the court pointed out that § 825.220 references § 29
U.S.C. § 2615(a), which covers interference with FMLA rights, but
makes no mention of the protections provided by the retaliation
and discrimination provisions.  Id.  Thus, while an agreement
bargaining away the right to take leave or be reinstated
thereafter would be prohibited, one exchanging the right to sue
for retaliation or discrimination for some consideration would
not.  See id.  The court did not specify whether an agreement
relinquishing the right to sue for interference with an
employee's substantive FMLA rights would be valid.

The Fourth Circuit disagreed with Faris, and held that the
plain language of § 825.220(d) prohibits any waiver of the
substantive or protective rights conferred by the FMLA unless
approved by the DOL or a court.  Taylor, 415 F.3d at 368.  While
Taylor has recently been vacated for rehearing by the Fourth
Circuit for unspecified reasons, we find that its core reasoning
is, nonetheless, persuasive.  See 2005 U.S. App. LEXIS 15744 (4th
Cir. 2006).  The Taylor court focused on the plain language of
the statute, supplemented by the administrative history of §

825.220(d).  Taylor, 415 F.3d at 368.  The court rejected the
Faris court's conclusion that § 825.220(d) contemplates only the
waiver of substantive rights.  Id.  The court noted that, despite
the Faris court's insistence that the entire section related only
to substantive rights, other subsections of § 825.220 mention the
prohibition on discrimination and retaliation.  Id. (citing §
825.220(c)).  Taylor concluded that the right to seek redress for
retaliation or discrimination is just as much a "right[] under
the FMLA" as the right to leave and reinstatement.  Id.

    The Taylor court supported its broad construction of §
825.220(d) by looking to the DOL's responses to comments on the
proposed regulation.  Taylor, 415 F.3d at 370-71.  In response to
proposed § 825.220(d), several large businesses sought an
exception that would explicitly allow employees to waive their
claims under the FMLA as part of severance or settlement
agreements as allowed in the Title VII and ADEA contexts.  Id.
(citing Preamble to the Final Regulations Implementing the Family
and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2218-19 (Jan.
6, 1995)).  The DOL rejected this request, noting that a
prohibition on waiver was in line with the policy objectives of
the FMLA.[9]

_____

    [9]The relevant portion of the Preamble reads as follows:

    Nationsbank Corporation (Troutman Sanders), Southern
    Electric International, Inc (Troutman Sanders), and
    Chamber of Commerce of the USA expressed concerns with
    the "no waiver of rights" provisions included in
    paragraph (d) of this section. They recommended

Like the Taylor court, we cannot fathom the Fifth Circuit's narrow construction of § 825.220(d) in light of this decision. This exchange of comments indicates that the DOL, and concerned employers, realized the impact that § 825.220(d) would have on release agreements made as part of severance packages.  All parties appeared to acknowledge that § 825.220(d) would prohibit soon-to-be-former employees from waiving their right to recover

---

explicit allowance of waivers and releases in connection with settlement of FMLA claims and as part of a severance package (as allowed under Title VII and ADEA claims, for example). The ERISA Industry Committee raised a similar concern with respect to the rule's impact on early retirement windows offered by employers. Such windows are typically open for a limited period of time and require all employees accepting the offer to be off the payroll by a certain date. If employees on FMLA leave have the right to participate in an early retirement program, but may continue to have and assert leave rights, the leave rights could adversely affect administration of the early retirement program.

The Department has given careful consideration to the comments received on this section and has concluded that prohibitions against employees waiving their rights and employers inducing employees to waive their rights constitute sound public policy under the FMLA, as is also the case under other labor standards statutes such as the FLSA. This does not prevent an individual employee on unpaid leave from returning to work quickly by accepting a "light duty" or different assignment. Accordingly, the final rule is revised to allow for an employee's voluntary and uncoerced acceptance of a "light duty" assignment. An employee's right to restoration to the same or an equivalent position would continue until 12 weeks have passed, including all periods of FMLA leave and the "light duty" period. In this connection, see also § 825.702(d).

60 Fed. Reg. 2180, 2218-19 (Jan. 6, 1995).

for violations of the FMLA that occurred during their employment. This belies the Fifth Circuit's tortuously limited definition of "waiver" as applying only to prospective rights.[10]

That the DOL analogized § 825.220(d) to the Fair Labor Standards Act ("FLSA") further supports the conclusion that the language of the regulation was not intended to be limited to the prospective waiver of the rights to leave and reinstatement.  The waiver of rights under the FLSA is limited to those releases and settlements approved by the DOL or a court.[11]  See Taylor, 415 F.3d at 371.  This comparison indicates an intent that the FMLA and rights thereunder be treated similarly to the FLSA, rather than Title VII or other anti-discrimination laws.

At least one other district court has found that § 825.200(d) invalidated a separation agreement to the extent that it purported to waive the right to sue for FMLA violations.  In Dierlam v. Wesley Jessen Corp., 222 F. Supp. 2d 1052 (N.D. Ill. 2002), the court considered whether a settlement agreement expressly waiving rights under the FMLA barred a former

---

[10]Also like the Taylor court, we are unable to find any definition of "waive" that suggests that it refers only to the relinquishment of prospective rights.  Taylor, 415 F.3d at 370.

[11]For the purposes of this case, we need not address the question of whether settlement of FMLA litigation requires approval of the court.  We note, however, that this requirement appears to reach beyond the plain language of § 825.220(d), and involves situations in which the right to sue for interference or discrimination has already been exercised.  See, e.g., McRae v. Master Craft Eng., Inc., Civ. A. No. 04-91, 2005 U.S. Dist. LEXIS 41372 (M.D. Ga. Nov. 3, 2005).

employee's suit for FMLA interference.  The court concluded that § 825.220(d) reasonable under <u>Chevron</u> and invalidated the waiver. <u>Dierlam</u>, 222 F. Supp. at 1055-56.  Though the case before the <u>Dierlam</u> court was based on interference, the court appeared to consider the waiver prohibition applicable to discrimination claims as well.  <u>Id.</u> at 1056.

District courts in Michigan have concluded that employment agreements limiting the amount of time in which an employee can bring suit against an employer are not enforceable as to FMLA claims.  <u>Conway v. Stryker Med. Div.</u>, Civ. A. No. 05-40, 2006 U.S. Dist. LEXIS 20753 (W.D. Mich. Apr. 18, 2006); <u>Lewis v. Harper Hospital</u>, 241 F. Supp. 2d 769 (E.D. Mich. 2002).  These courts found that the statute of limitations set forth in the FMLA was a right under the law that could neither be waived under § 825.220(d) nor interfered with under § 825.220(a).  <u>Id.</u>  In so concluding, the <u>Conway</u> court noted that "[t]he filing of a [sic] FMLA suit is the exercise of FMLA rights . . . ."  <u>Conway</u>, 2006 U.S. Dist. LEXIS at *3.

Based on the plain language of the regulation, we find that § 825.220(d) prohibits an employee from waiving the right to sue for FMLA violations through a severance agreement.  This prohibition applies to both interference and discrimination claims.

Having concluded that neither interference nor discrimination claims may be waived, we must examine the effect

of this conclusion on the Agreement.  Plaintiffs' counsel urges

that the Agreement, because it lacks a severance clause, is void

in its entirety as a result of the void attempt to waive FMLA

claims.[12]  Defendant argues that, even if the Agreement is

tainted by the invalid FMLA waiver, Plaintiff has ratified the

Agreement by retaining the consideration after discovering that

the release was voidable.[13]  The Third Circuit, however, has

concluded that the concepts of ratification and tender are

inapplicable to federal remedial statutes.  See Long v. Sears

Roebuck & Co., 105 F.3d 1529, 1541 (3d Cir. 1997).  While, as

Defendant points out, the specific finding of Long was that the

tender back doctrine does not apply to releases of ADEA claims

_____

[12]Plaintiff's counsel further argues that ambiguities exist
with regard to the listed statutes because the language may
attempt to waive Plaintiff's rights to file an EEOC charge or
otherwise participate in proceedings under Title VII.  The cases
relied upon by Plaintiff, however, fail to show that this right
has been extended to invalidate otherwise valid severance
agreement language that does not go so far as to specifically
prohibit a plaintiff from filing an EEOC charge.  See EEOC v.
Shell Oil Co., 466 U.S. 54, 69 (1964) (concluding that EEOC
regulations with as to the specificity of allegations made by the
EEOC in a pattern or practice case should be broadly construed to
permit investigation to determine whether a pattern or practice
lawsuit is warranted); Gilmer v. Interstate/Johnson Lane Corp.,
500 U.S. 20, 28 (1991) (finding that an arbitration clause was
not invalid as interfering with a plaintiff's rights under the
Age Discrimination in Employment Act ("ADEA")).

[13]Ratification and tender back are common law doctrines.  As
applied to releases, these concepts require that an employee must
return the consideration given for executing the release before
bringing a claim relinquished in the agreement.  See generally,
Long, 105 F.3d at 1540 (citations omitted).  Where consideration
is retained, the employee is said to have ratified the agreement,
and is bound by even those terms that are otherwise voidable.
Id.

that are void under the Older Workers Benefit Protection Act ("OWBPA").  Id. at 1545.  The court noted, however, that ratification and tender back had been found inapplicable in Title VII and antitrust laws because such a requirement would unduly impair the remedial effect intended by such legislation.  Id. at 1541 n.21 (citations omitted).  The ADA and FMLA are clearly federal remedial statutes.  Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003) (upholding the FMLA as valid remedial legislation); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 263 (3d Cir. 2006) (noting the "broad remedial purposes of Title VII and the ADA").  While ratification may be applicable in other circumstances, we will not impose this burden where the rights relinquished arise from a federal remedial statute.

That ratification is inapplicable does not, however, answer the question of whether the entire agreement is void because it apparently attempted to waive FMLA rights.[14]  Defendant does not address the question of severability.  Plaintiff has correctly pointed out that the Agreement contains no severability provision or savings clause.  In the absence of any argument by Defendant, we cannot conclude that severability of the agreement is grounds for summary judgment on their behalf.  Because Defendant has not successfully shown that Plaintiff's claims are barred by the

---

[14]While we have already determined that any waiver of FMLA rights in the Agreement is void, if other provisions survive, we must consider the merit of Plaintiff's arguments as to why those provisions are voidable.

Agreement as a matter of law, summary judgment is not

appropriate, and is denied pursuant to the attached order.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA DOUGHERTY            :    CIVIL ACTION
                            :
        v.                  :    05-2336
                            :
TEVA PHARMACEUTICALS USA     :


## <u>ORDER</u>

AND NOW, this 29th day of August, 2006, upon consideration of Defendant's Motion for Judgment on the Pleadings and/or Summary Judgment (Doc. Nos. 6, 7), and all supplements and responses thereto (Doc. Nos. 14, 23, 26, 29, 30), it is hereby ORDERED that the motion is DENIED.


                            BY THE COURT:



                            s/J. Curtis Joyner
                            J. CURTIS JOYNER, J.