IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA DOUGHERTY          :        CIVIL ACTION
                           :
      v.                   :
                           :        NO. 05-CV-2336
TEVA PHARMACEUTICALS USA   :


Joyner, J.                                    February 20, 2008

<u>**MEMORANDUM AND ORDER**</u>

Presently before the Court is Defendant TEVA Pharmaceuticals USA's ("TEVA") Motion for Judgment on the Pleadings and/or Summary Judgment (Doc. No. 44).  For the reasons below, the Court **GRANTS** Defendant's motion and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint.


**Procedural Background**

On May 23, 2005, Barbara Dougherty ("Dougherty" or "Plaintiff") filed a complaint <u>*pro se*</u> against TEVA, her former employer, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, <u>*et seq*</u>. ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, <u>*et seq*</u>. ("FMLA").  TEVA filed an answer and subsequently moved for Judgment on the Pleadings and/or Summary Judgment (Doc. No. 6), arguing that Dougherty's claims were barred by a release she entered into as part of a severance package.  This agreement provided that

Dougherty, in exchange for various severance benefits, would voluntarily release TEVA from liability for any claims arising out of her employment.  See Dougherty v. TEVA Pharms. USA, No. 05-2336, 2006 U.S. Dist. LEXIS 62179, at *4 (E.D. Pa. Aug. 29, 2006) ("_Dougherty I_").  The Court appointed counsel to represent Dougherty and granted her leave to conduct limited discovery regarding the validity of the release agreement.  See May 11, 2006 Order (Doc. No. 19).

On August 29, 2006, the Court held that 29 C.F.R. § 825.220(d) ("Section 825.220(d)")[1] prohibited Plaintiff from waiving her rights under the FMLA and therefore denied Defendant's initial motion for summary judgment.  See Dougherty I, 2006 U.S. Dist. LEXIS 62179, at *4.  The Court did not, however, reach the merits of Plaintiff's claims.  In response to the Court's decision, TEVA moved for it to reconsider its interpretation of Section 825.220(d) (Doc. No. 33).  The Department of Labor ("DOL") filed a brief (Doc. No. 38) in support of TEVA's position that Section 825.220(d) did not bar an employee from waiving (i.e., settling) past FMLA claims.

On April 9, 2007, after reconsidering the regulation's text and related legislative history, the Court vacated its earlier order and held Section 825.220(d) "does not prohibit an employee from waiving _past_ FMLA claims as part of a severance agreement or

---

[1]   29 C.F.R. § 825.220(d) provides that "employees cannot waive, nor may employers induce employees to waive, their rights under [the] FMLA."

settlement." <u>Dougherty v. TEVA Pharms. USA</u>, No. 05-2336, 2007
U.S. Dist. LEXIS 27200, at *26 (E.D. Pa. Apr. 9, 2007) (emphasis
in original) ("<u>Dougherty II</u>").[2]  Shortly thereafter, TEVA filed
this current Motion for Judgment on the Pleadings and/or Summary
Judgment.


## Factual Background

TEVA hired Dougherty on May 4, 1998 as a receptionist.  <u>See</u>
D. Memo., Exh. A (Dougherty's Deposition – Excerpts) ("Pl. Dep.")
at 18.  She was later promoted to a senior secretary position.
<u>Id.</u> at 20-21.  In 2003, Dougherty began having disagreements with
one of her supervisors, Valerie Cullen ("Cullen"), over the
quality of Dougherty's work performance.  <u>See id.</u> at 27-29.
Dougherty also felt that Cullen was inappropriately involved with
her family's efforts to convince Dougherty to resume medication

---

[2] In <u>Dougherty II</u>, this Court expressly declined to follow <u>Taylor v.
Progress Energy, Inc.</u>, 415 F.3d 364 (4th Cir. 2005) ("<u>Taylor I</u>"), vacated by
2006 U.S. App. LEXIS 15744 (4th Cir. June 14, 2006), which held that Section
825.220(d) prevents an employee from waiving past FMLA claims as part of a
severance agreement. <u>See</u> <u>Dougherty II</u>, 2007 U.S. Dist. LEXIS 27200, at *26
n.20.  A divided panel of the Fourth Circuit has since re-affirmed <u>Taylor I</u>,
holding that "without prior DOL or court approval, 29 C.F.R. § 825.220(d) bars
the prospective and retrospective waiver or release of rights under the FMLA,
including the right to bring an action or claim for a violation of the Act."
<u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 463 (4th Cir. 2007) ("<u>Taylor
II</u>") (petition for certiorari filed Oct. 22, 2007).  The dissenting judge in
<u>Taylor II</u> disagreed with the majority's conclusion that Section 825.220(d)'s
language was clear and unambiguous.  Rather, she noted that the word "rights"
is fraught with ambiguity and would defer, under <u>Auer v. Robbins</u>, 519 U.S.
452, 461 (1997), to the DOL's interpretation of its own regulation. <u>See</u> <u>Taylor
II</u>, 493 F.3d at 463-64 (Duncan, J., dissenting).  After considering <u>Taylor II</u>,
and its criticism of this Court's decision in <u>Dougherty II</u>, the Court adheres
to its holding in <u>Dougherty II</u>.  Specifically, the Court declines to reverse
course and follow <u>Taylor II</u> because: (1) the majority's analysis of Section
825.220(d)'s text and administrative history is unpersuasive; and (2) the
majority did not sufficiently defer to the DOL.

she had been prescribed to treat her post-traumatic stress disorder. See id. at 44. In May 2003, Dougherty contacted the Equal Employment Opportunity Commission ("EEOC") because she felt that she might be a victim of discrimination. See id. at 34-35. She also began to seek employment elsewhere. See id. at 29-31.

Dougherty subsequently discussed the Cullen situation with Anthony Cerbone ("Cerbone"), TEVA's Senior Director of Human Resources. See id. at 32. According to Dougherty, Cerbone suggested that it might be in her interest to leave TEVA, and mentioned the possibility of providing her with a severance package. See id. at 29-30, 32. On June 9, 2003, Plaintiff received a two-page Separation Agreement and General Release, which provided her one month's salary and COBRA. See id. at 57. Dougherty left work that day and never returned. See id. Dougherty acknowledges that it was *her* decision to leave TEVA. See id. at 39.

The next day, June 10, 2003, Dougherty telephoned Cerbone about the separation agreement and indicated that she no longer wanted to leave TEVA, rather she just wanted a leave of absence. See id. at 57-58. After some discussion, Cerbone offered to increase the severance package to two months' salary and COBRA. See id. Dougherty agreed. See id. On June 13, 2003, Cerbone sent Dougherty a revised, signed two page Separation Agreement and General Release, which included the increased severance

-4-

benefits.  <u>See</u> <u>id.</u> at 37-38; D. Memo., Exh. B (Separation
Agreement and General Release) ("Release").[3]

Upon receipt, Dougherty discussed the Release with her son,
daughter-in-law, and Ed McCaffrey, a representative from the
EEOC.  <u>See</u> Pl. Dep. at 39-40.  Each of them advised her to sign
the Release.  <u>See</u> <u>id.</u> at 45-46.  Dougherty also attempted,
unsuccessfully, to contact approximately half-a-dozen attorneys
to discuss the Release.  <u>See</u> <u>id.</u> at 41.  On July 2, 2003,
Dougherty executed the Release and returned it to TEVA.  <u>See</u> <u>id.</u>
at 43.

On July 9, 2003, Dougherty telephoned Cerbone's office
intending to revoke the Release.[4]  <u>See</u> <u>id.</u> at 49-50.  Because
Cerbone was unavailable, Dougherty left a message with his
secretary.  <u>See</u> <u>id.</u>  She didn't explain why she was calling and

---

[3] The language of the Release provides, in pertinent part: "TEVA agrees
to pay Dougherty, by means of a lump sum, the equivalent of two month's wages,
in addition to the equivalent cost of two month's COBRA coverage and further
agrees not to contest DOUGHERTYS' application, if any, for unemployment
compensation benefits and, in consideration of such and intending to be
legally bound, DOUGHERTY does hereby REMISE, RELEASE AND FOREVER DISCHARGE
TEVA, ... of and from any and in all manner of actions, cause of action suits,
debts, claims and demands arising from or relating in any way to her
employment with TEVA. Dougherty specifically waives any claims that she might
have under Title VII of the Civil Rights Act of 1964, the Americans with
Disabilities Act, the Age Discrimination in Employment Act, the Employee
Retirement Income and Security Act of 1974, the Pennsylvania Law Against
Discrimination and any and all other federal, state or local statutory claims
or claims under common laws including claims for breach of contract, wrongful
discharge, defamation or tortious conduct and any and all other claims arising
out of DOUGHERTY'S employment with TEVA which could be brought in federal or
state court or before a federal, state or local agency.

[4] The Release provides that "[Dougherty] may revoke this Agreement for
a period of seven (7) days following the date she signs the Agreement any that
the Agreement will not become effective until the seven (7) day revocation
period has expired." Release ¶(2)(d).

only asked that her call be returned.  See id.  ("Q: When you
left messages for [] Cerbone or his secretary, did you in any way
suggest that the purpose of your call was to revoke the agreement
that you had signed? Dougherty: No. I thought they would know.
His secretary may not know, but I thought [Cerbone] would."); see
also id. at 67 (Q: "What was the content of your message when you
called TEVA? Dougherty: Just to please return my call.").  Two
days later, on July 11, 2003, Dougherty called Cerbone "a couple
of times" but didn't reach him. See id. at 49.  She again left
messages (on Cerbone and his secretary's voicemail) asking for
her calls to be returned. See id. at 49.  That same day, Michelle
Wilhelm, an Administrative Assistant in TEVA's Human Resources
Department, telephoned Dougherty at her son's house but did not
find her there.  See id. at 65.  Dougherty admits that she tried
neither to revoke the Release in writing nor contact anyone
(aside from Cerbone) at TEVA about the Release.  See id. at 50,
67.  On July 11, 2003, in accordance with the Release's terms,
Dougherty received a check from TEVA which she cashed. See id. at
52.

## **Standard of Review**

In deciding a motion for summary judgment[5] under Federal

---

[5] Under Rule 12(c) of the Federal Rules of Civil Procedure, a court is
to treat a motion for judgment on the pleadings as one for summary judgment
"if matters outside the pleadings are presented to and not excluded by the
court." Fed. R. Civ. P. 12(c); Sikirica v. Nationwide Ins. Co., 416 F.3d 214,
219 n.3 (3d Cir. 2005).  Because the parties reference Dougherty's deposition
and other matters beyond the pleadings, the Court will treat TEVA's motion as
one for summary judgment.

Rule of Civil Procedure 56, a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted). Rule 56(c) provides that summary judgment is appropriate:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Upon such a showing, the burden shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In doing so, the party opposing summary judgment cannot simply rest on the allegations contained in its

-7-

pleadings and must establish that there is more than a "mere
scintilla of evidence in its favor." Anderson, 477 U.S. at 249.
Showing "that there is some metaphysical doubt as to the material
facts" is insufficient to defeat a motion for summary judgment.
Matsushita Elec. Indus. Co., 475 U.S. at 586.  If the non-moving
party fails to create "sufficient disagreement to require
submission [of the evidence] to a jury," the moving party is
entitled to judgment as a matter of law.  Anderson, 477 U.S. at
251-52.

## Discussion

### *A. Whether the Release is Void because it Violates the FMLA?*

Dougherty first argues that the Release is void because TEVA
offered to increase her severance package in exchange for
foregoing FMLA leave (i.e., induced her to waive her rights under
the FMLA).  See Pl. Opp. at 11-12.  On June 10, 2003, Dougherty
telephoned Cerbone to discuss the initial separation agreement.
At that time, she indicated a desire to take a leave of absence –
purportedly FMLA leave – instead of permanently leaving TEVA.  In
response, Cerbone offered to increase Dougherty's severance
benefits in exchange for her agreeing to execute a revised
separation agreement (i.e., the Release).  Dougherty agreed to
Cerbone's suggestions.  This conduct, Dougherty argues, violates
Section 825.220(d)'s proscription forbidding employers from
inducing employees to waive their rights under the FMLA.

-8-

Assuming Dougherty was eligible for FMLA leave, the Court rejects this argument because this alleged FMLA violation pre-dated the execution of the Release.  In other words, at the time Dougherty executed the Release this claim had already accrued.  See, e.g., Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (cause of action accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action).  And thus, by subsequently executing the Release on July 2, 2003, Dougherty waived this particular claim (as well as any others that had accrued before she executed the Release).  See Dougherty II, 2007 U.S. Dist. LEXIS 27200, at *26 (Section 825.220(d) "does not prohibit an employee from waiving *past* FMLA claims as part of a severance agreement or a settlement.").

Dougherty nevertheless insists she can maintain a cause of action for this alleged FMLA violation because "[e]ntering into a settlement or severance agreement . . . doesn't change anything for the employee in terms of rights under the FMLA – she still retains all of them."  Pl. Opp. at 11 (quoting Dougherty II, 2007 U.S. Dist. LEXIS 27200, at *25).  Dougherty, however, misapprehends the import of this language.  An employee who *remains employed* with the same employer after entering into a

*settlement* agreement[6] continues to enjoy the protections of the FMLA vis-à-vis that employer.  And thus the employee can bring suit in the future for any later violations of the FMLA on the part of that employer.  But one who enters into a severance agreement (which includes a waiver of past FMLA claims) is no longer an employee and enjoys no FMLA protections against a former employer.[7]  Therefore, regardless of whether a current employee enters into settlement agreement or a former employee enters into a severance agreement, their respective rights under the FMLA don't change – the current employee will have these rights going forward and the former employee will not.  Thus, after signing the Release (and assuming its validity), Dougherty no longer had any FMLA claims because she had waived her past ones and could not, as a former employee, assert any new ones based on TEVA's subsequent conduct.

---

[6]   To be clear, an employee ("current employee") who enters into a "settlement agreement" with an employer continues to be employed by that same employer.  In contrast, an employee who enters into a "severance agreement" with an employer is a "former employee" of that employer.

[7] That the severance agreement waives *past* FMLA claims is a significant detail because it is not the status of being a former employee that determines whether one can assert FMLA claims.  For example, an employee who quits or is fired may be able to assert some FMLA claims that accrued during her employment against her former employer. See, e.g., Grosenick v. SmithKline Beecham Corp., 454 F.3d 832, 835-36 (8th Cir. 2006) (reviewing a former employee's FMLA claim); Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 142-48 (3d Cir. 2004) (considering a former employee's interference and retaliation/dismissal claims under the FMLA).

**B. Is the Release Enforceable?**

A contract that releases potential federal employment discrimination claims is valid if it was knowingly and voluntarily executed.  See <u>Coventry v. U.S. Steel Corp.</u>, 856 F.2d 514, 522 (3d Cir. 1988).  To determine whether a release is valid, the Third Circuit directs courts to consider the totality of the circumstances surrounding its execution.  And to do so, district courts should consider the following non-exhaustive factors:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before singing it; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the release; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which she was already entitled to by law.

<u>Cirillo v. Arco Chemical Co.</u>, 862 F.2d 448, 451 (3d Cir. 1988) (citing <u>Coventry</u>, 856 F.2d at 523).  Courts should also consider "'whether there is evidence [that the employer procured the release through] fraud or undue influence, or whether enforcement of the release would be against the public interest.'"  <u>Cuchara v. Gai-Tronics Corp.</u>, 129 Fed. App'x 728, 731 (3d Cir. 2005) (quoting <u>W.B. v. Matula</u>, 67 F.3d 484, 497 (3d Cir. 1995) (citing

-11-

Coventry, 856 F.2d at 522-23)) (unpublished decision).

After consideration of these factors, the Court concludes that Dougherty knowingly and voluntarily executed the Release. Accordingly, her ADA and FMLA claims are barred.

### 1. Clarity and Specificity of the Release Language

The Release provides, in relevant part: "DOUGHTERY waives _any claims_ that she might have under Title VII [,] the [ADA], the Age Discrimination Employment Act, [ERISA], the Pennsylvania Law against Discrimination, and _any and all other federal_, state or local statutory claims . . . arising out of DOUGHERTYS' [sic] employment with TEVA . . . ." Release ¶ 1 (emphasis added). The Court finds this language clear and unambiguous, and effectively communicates the consequences of executing the Release. By signing the Release, Dougherty agreed to waive _any_ federal or state claim arising out of her employment, and not just claims she may have had under the statutes mentioned in the Release.

_First_, a waiver provision is not unclear or ambiguous merely because it sweeps broadly. See Easton v. Bristol-Meyers Squibb Co., 289 F. Supp. 2d 604, 610 (E.D. Pa. 2003) ("[T]he mere fact that [a release's] language may be boilerplate, i.e., that it was not specifically drafted with [the employee's] claims in mind, does not detract from its legal significance."); but see Riddell v. Medical Inter-Insurance Exch., 18 F. Supp. 2d 468, 472 (D.N.J.

1998) ("The absence in the Release of any reference to specific claims that are being waived by [the plaintiff] also diminishes its clarity.") (citations omitted).  *Second*, a layperson, like Dougherty, could readily understand the Release's language because it is written in "a very straightforward fashion" using plain English that avoids legalese or jargon.  Easton, 289 F. Supp. at 610; see also Riddell, 18 F. Supp. 2d at 472 (citing Mullen v. New Jersey Steel Corp., 733 F. Supp. 1534, 1544 (D.N.J. 1990)).  *Third*, the Release was well-organized because the section pertaining to the waiver of claims was set forth in its first and second paragraphs and not buried in the middle of a lengthy legal document.  Cf. Cuchara v. Gai-Tronics, No. 03-6573, 2004 U.S. Dist. LEXIS 11334, at *17 (E.D. Pa. Apr. 8, 2004) (release containing waiver language in a separate paragraph effectively communicates to an employee which claims he is waiving), aff'd 129 Fed. App'x 728 (3d Cir. 2005) (unpublished).  *Fourth*, by reiterating in separate paragraphs that Dougherty was waiving all claims she had against TEVA, the Release effectively emphasized the consequences of executing it.  See Release ¶¶ 1, 2(a).  In sum, the Court finds the Release's waiver language to be materially indistinguishable from that which courts within this Circuit have concluded is clear and unambiguous.  See Cuchara, 2004 U.S. Dist. LEXIS 11334, at *17-18; Easton, 289 F. Supp. 2d at 610; Ponzoni v. Kraft General Foods, 774 F. Supp.

-13-

299, 309-10 (D.N.J. 1991); <u>Pears v. Spanq</u>, 718 F. Supp. 441, 445-46 (W.D. Pa. 1989).


    *2. Education and Experience*

    The Third Circuit has never decided, as matter of law, the minimum level of education and experience an employee needs to understand and execute a contractual release.  In the absence of precise guidance from the Court of Appeals, some district courts have treated this factor as a "minimal threshold" to overcome in deciding whether a waiver is valid.  <u>See, e.g.,</u> <u>Ponzoni</u>, 774 F. Supp. at 237.  And generally, courts view persons with college educations, professional degrees, business experience, or some combination thereof, as having the requisite "education and experience" to understand a contractual release.  <u>See, e.g.,</u> <u>Cirillo</u>, 862 F.2d at 453; <u>Cuchara</u>, 2004 U.S. Dist. LEXIS 11334, at *17-18; <u>Easton</u>, 289 F. Supp. 2d at 610; <u>Riddell</u>, 18 F. Supp. 2d at 472.  But having a college education isn't a necessary prerequisite.  <u>See</u> <u>Pears</u>, 718 F. Supp. At 446 (finding that high school diploma and attendance at a one-year secretarial school constituted sufficient education and experience to execute a release).

    Guided by these precedents, the Court concludes, based on the record before it, that Dougherty had sufficient education and experience to understand the Release.  *First*, Dougherty worked

for TEVA for approximately five years as a senior secretary in a
business environment.  *Second*, and more significantly, Dougherty
admits that she "knew that [she] was signing an agreement not to
bring a claim against" TEVA. Pl. Dep. at 47.  The Court therefore
finds there is no triable issue of fact as to whether Dougherty
had enough education and experience to understand the Release.


### *3. Time to Deliberate Whether to Sign the Release*

Dougherty had twenty-one (21) days to decide whether to
sign the release and executed it twenty (20) days after receiving
it from TEVA.  <u>See</u> Release ¶ 2(c); Pl. Dep. at 44.  During this
time, she consulted with family members, the EEOC and, by her
estimation, attempted to contact approximately a half-dozen
attorneys in deciding whether to execute the Release.  Dougherty
points to nothing in the record suggesting that TEVA rushed her
into making a decision or that she was denied the opportunity to
meaningfully consider the ramifications of executing the Release.
Thus, the Court finds there is no triable issue of fact as to
whether Dougherty had sufficient time to decide whether to sign
the Release.  <u>Accord</u> <u>Cuchara</u>, 2004 U.S. Dist. LEXIS 11334, at
*18-19; <u>Easton</u>, 289 F. Supp. 2d at 610.

## *4. Whether Dougherty Knew or Should Have Known Her Rights*

It is undisputed that Dougherty believed she had a discrimination claim against TEVA before signing the Release.  In May 2003, Dougherty contacted the EEOC because she believed that TEVA discriminated against her.  She did not pursue this claim, however, and admitted that she understood that in exchange for two months' salary and COBRA benefits, she was agreeing not to bring suit against TEVA.  See Pl. Dep. at 41.

This concession notwithstanding, Dougherty contends that she believed that the Release was part of a continuous harassment and "illegal".  See id. at 41, 47.  And so she didn't really believe that by executing the Release she was foregoing her claims against TEVA.  While that might be true, it is well-established that an employee's "misguided subjective beliefs, without more, that the release [she] signed did not bar [her] from bringing claims . . . was 'insufficient to defeat summary judgment in the face of clear and unambiguous language.'"  Morris v. The Penn Mut. Life Ins. Co., No. 87-7063, 1989 U.S. Dist. LEXIS 1690, at *8 (E.D. Pa. Feb. 21, 1989) (quoting Cirillo, 862 F.2d at 452).  Accordingly, Dougherty's argument in this regard is without merit.

-16-

### *5. Opportunity to Seek Counsel*

An employee has a meaningful opportunity to seek legal counsel regarding a release/waiver if her employer encourages her to do so "orally or in writing." <u>Cirillo</u>, 862 F.2d at 454. Thus, it's irrelevant "whether [an employee] in fact receive[s] the benefit of [legal] counsel." <u>Id</u>. Indeed, "even where a[n] [employee] does not seek counsel" courts have concluded that "an express statement regarding his or her right to do so" tilts this factor in favor of finding a release/waiver valid. <u>Pears</u>, 718 F. Supp. at 446.

The Release unambiguously advised Dougherty that she should consult with an attorney. <u>See</u> Release ¶ 2(b) ("DOUGHERTY . . . has, by virtue of this Agreement, been *advised in writing by TEVA to consult with an attorney* in connection with this Agreement.") (emphasis added); <u>see also</u> <u>Easton</u>, 289 F. Supp. 2d at 610-11. And this wasn't a hollow suggestion. Dougherty had twenty-one days to decide whether to sign the Release and admits to trying to contact approximately half-a-dozen attorneys to discuss the Release. Therefore, the Court finds that no genuine issue of material fact exists regarding whether Dougherty had a meaningful opportunity to seek legal counsel.

*6. Opportunity to Negotiate the Terms of the Release*

When an employee has an opportunity to negotiate a release's terms, that's a strong indication it was knowingly and voluntarily executed.  "While the absence of such an opportunity is not as strong an indicia that a release [was executed] unknowing[ly] or involuntary[ly], to the extent such absence and other evidence suggest that the atmosphere surrounding the execution was oppressive, it is, of course, a relevant consideration."  Cirillo, 862 F.2d at 454 n.4.  The critical consideration then is whether the employee had an *opportunity* to negotiate the terms of a release, not whether she actually took advantage of that opportunity. See, e.g., Cuchara, 2004 U.S. Dist. LEXIS 11334, at *21-22.

The record before the Court indicates that Dougherty not only had an opportunity to negotiate the terms of the Release but actually took advantage of it.  TEVA initially offered Dougherty one month's salary and COBRA as severance benefits.  After Dougherty had a discussion with Cerbone, however, TEVA (through Cerbone) doubled Dougherty's severance benefits to two months' salary and COBRA. See Pl. Dep. at 57-58.  Because Dougherty actually negotiated the terms of the Release, and has not otherwise introduced any evidence suggesting that the atmosphere surrounding its execution was oppressive, the Court finds this factor favors finding the Release valid.  Cf. Cirillo, 862 F.2d

-18-

at 454 n.4 (observing that an employee had an opportunity to
negotiate the terms of his release despite the fact that his
employer did not afford him with a formal opportunity to do so
because he "did not perceive himself as being completely at the
mercy of an intractable employer...[and] perceived the channels
for negotiation open and in fact availed himself of them").


### 7. The Consideration in Return for the Waiver

TEVA was not required by law or contract to offer Dougherty
two months' salary and COBRA as severance benefits.  Thus,
Dougherty received, as a matter of law, adequate consideration in
exchange for waiving any potential claims. Cf. Cirillo, 862 F.2d
at 454 ("The special allowance given to Cirillo and accepted by
him in exchange for his Release exceeded the employee benefits to
which he was already entitled . . . . Accordingly, we find
unpersuasive Cirillo's argument that his waiver was unsupported
by consideration and thus not enforceable."); see also Cuchara,
2004 U.S. Dist. LEXIS 11334, at *20-21; Easton, 289 F. Supp. 2d
at 611; Riddell, 18 F. Supp. 2d at 474.


### 8. Duress or Undue Influence.

Dougherty also argues that she signed the Release under
duress or coercion.  To determine whether a release entered into
by a Pennsylvania employee is unenforceable because of duress,

-19-

courts within this Circuit apply Pennsylvania law. See, e.g.,
Easton, 289 F. Supp. 2d at 612.[8]  In the context of a contractual
dispute, the Pennsylvania Supreme Court has defined duress as
"that degree of restraint or danger, either actually inflicted or
threatened and impending, which is sufficient in severity or
apprehension to overcome the mind of a person of ordinary
firmness . . . . Moreover, [without] threats of actual bodily
harm there can be no duress where the contracting party [can]
consult with counsel." Carrier v. William Penn Broad. Co., 233
A.2d 519, 521 (Pa. 1967) (quoting Smith v. Lenchner, 205 A.2d
626, 628 (Pa. Super. Ct. 1964)); see also Three Rivers Motor Co.
v. Ford Motor Co., 522 F.2d 885, 893 (3d Cir. 1975).

Dougherty does not allege that TEVA threatened her with
physical harm.  And, as discussed above, TEVA advised Dougherty
in writing to consult with an attorney regarding the Release (and
gave her ample time to do so).  Thus, as a matter of law,
Dougherty cannot establish she executed the Release under
duress.[9]

_____

[8]  This presumes that the release was executed within Pennsylvania and
does not contain a choice of law provision.

[9] Dougherty also contends that she was unable to voluntarily execute the
Release because of her financial circumstances and fragile mental state.  She
claims to have signed it because she "needed . . . money for therapy . . .
[and] a place to live." Pl. Dep. at 45.  In Wastak v. Lehigh Valley Health
Network, the Third Circuit rejected similar assertions when the plaintiff
failed to "come forth with sufficient evidence to create a genuine issue of
material fact with regard to any lack of understanding or voluntariness on his
part in signing [a r]elease." 342 F.3d 281, 295 (3d Cir. 2003).  While noting
that such matters "should usually be decided by a jury," Wastak nevertheless
affirmed the district court's grant of summary judgment in favor of the
defendant-employer because the plaintiff didn't introduce evidence supporting

### C. Did Dougherty effectively revoke the Release?

Finally, Dougherty argues regardless of whether she knowingly and voluntarily executed the Release, she subsequently rescinded it on either July 9 or 11, 2003 when she attempted to contact Cerbone.  The Court disagrees.

Under Pennsylvania law,[10] the "notice for the termination of a contract must be clear and ambiguous. . . ."  Maloney v. Madrid Motor Corp., 122 A.2d 694, 696 (Pa. 1956) (citing Wright v. Bristol Patent Leather Co., 101 A. 844 (Pa. 1917); Berwick Hotel Co. v. Vaughn, 150 A. 613 (Pa. 1930); Holmes Electric Protective Co. of Philadelphia v. Goldstein, 24 A.2d 161 (Pa. Super. Ct. 1942)).  A party who wishes to rescind (or terminate) a contract must therefore: (1) give notice to the other party of her intent to do so; and (2) communicate that intent clearly and unambiguously.  In this case, Dougherty did neither.

Although Dougherty asserts that she intended to revoke the Release, TEVA never received notice of her intentions.

_____

his claims and the record belied his assertions to the contrary.  This case is no different.  Dougherty has introduced no evidence that she was mentally impaired at the time she executed the Release.  And like the plaintiff in Wastak, Dougherty "was of sufficient mental state to make several attempts to retain legal counsel." Id.  Moreover, even if there was evidence in the record that Dougherty was experiencing financial pressures when she executed the Release, "the existence of [such] pressure to sign a waiver is insufficient to establish that it was executed involuntarily." Id. (citing Cirillo, 862 F.2d at 452 n.2 ("Economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release."); Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 893 (3d Cir. 1975)).

    [10] The parties appear to agree that Pennsylvania law governs whether Dougherty effectively revoked the Release.

Dougherty's phone calls to Cerbone did not clearly and unambiguously communicate her intent to revoke the Release. Indeed, Dougherty admits that her phone calls communicated nothing more to TEVA than "call me back."  At no point did Dougherty inform (via telephone, fax, e-mail, etc.) anyone at TEVA that she wanted to revoke the Release.  And aside from these phone calls, Dougherty points to nothing indicating that she clearly and unambiguously communicated to TEVA her intentions to revoke the Release.  Thus, Dougherty's phone calls to Cerbone on July 9 and 11, 2003 did not effectively revoke the Release.  <u>Cf. Woods v. Denver Dep't of Revenue</u>, 45 F.3d 377, 379 (10th Cir. 1995) (plaintiff's phone calls to defendants' counsel explaining it was an "emergency" did not give defendants sufficient notice that plaintiff intended to rescind a settlement agreement).[11]

## Conclusion

For the foregoing reasons, the Court concludes that Dougherty knowingly and voluntarily executed the Release. Because the Release, including its waiver provision, is

---

[11]  Dougherty also argued that she did not leave messages with anyone at TEVA regarding the Release because she believed its confidentiality provision prohibited her from doing so. <u>See</u> Release ¶ 6.  Assuming this is true, that does not explain why Dougherty did not leave a message for Cerbone communicating her intent to revoke the Release.  After all, it was Cerbone who negotiated the Release's terms with Dougherty.  Moreover, Dougherty could have communicated her intent to revoke the Release through other means - fax, e-mail, U.S. mail, in person - but failed to do so.  Dougherty does not explain why the Release's confidentiality provision prevented her from taking any of these actions.

enforceable, the Court dismisses with prejudice Dougherty's AMA and FMLA claims.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BARBARA DOUGHERTY　　　　　:　　　　CIVIL ACTION
　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　:　　　　NO. 05-CV-2336
TEVA PHARMACEUTICALS USA　　:

**<u>ORDER</u>**

　　　　　　AND NOW, this　　20th　　day of February, 2008, upon
consideration of Defendant's Motion for Judgment on the Pleadings
and/or Summary Judgment (Doc. No. 44), Plaintiff's Response (Doc.
No. 46), and Defendant's Reply (Doc. No. 48) thereto, it is
hereby **ORDERED** as follows:

　　　1. Defendant's Motion for Summary Judgment is **GRANTED.**

　　　2. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

　　　3. The Clerk of Court is to **CLOSE** this Matter.


　　　　　　　　　　　　　　　　BY THE COURT:




　　　　　　　　　　　　　　　　s/J. Curtis Joyner
　　　　　　　　　　　　　　　　J. Curtis Joyner, J.